GEORGE D. BARR, as Administrator, etc., of PERMELIA H. KESTER, Deceased, Respondent, v. MARTIN BENZINGER and Others, Defendants.

WILLIAM H. BARR, Second Purchaser, Appellant; CHRISTIAN C. LUIPPOLD, First Purchaser, and JACOB BENZINGER, Trustee of MARTIN BENZINGER, Respondents.

*Mortgage foreclosure sale — failure of the purchaser to pay the ten per cent — when a resale will be set aside as having been unfairly made.*

At a mortgage foreclosure sale conducted by a referee, which took place at ten o'clock in the morning, the mortgaged premises were sold for $4,200, ten per cent of which was paid by a check given by the purchaser upon a bank which, through a mistake, refused payment thereof. The referee thereupon, at three o'clock on the afternoon of the same day, again offered the premises for sale, when they were struck down to a son of the plaintiff for $3,000 by the referee, to whom the purchaser at the first sale, immediately after learning that the second sale had taken place, tendered in gold the amount of the percentage payable under his bid on the first sale, which was refused. The premises were soon afterwards sold by the purchaser at the second sale for $4,500 to a party who had bid $4,150 at the first sale.

*Held,* that the sale should be set aside and a new sale be ordered.

APPEAL by William H. Barr, the second purchaser at a sale under foreclosure, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 5th day of November, 1897, setting aside the sale made under a judgment of foreclosure, and directing a resale of the premises.

*Eugene M. Bartlett*, for William H. Barr, appellant.

*Thomas Cary Welch*, for Christian C. Luippold, respondent.

*William B. Frye*, for Jacob Benzinger, respondent.

*George Clinton*, for Darlington & Kreuz, purchasers.

FOLLETT, J.:

April 27, 1897, a judgment of foreclosure was entered in this action and Urban C. Bell was appointed by it to sell the mortgaged premises. The premises were duly advertised to be sold at ten o'clock A. M. on the 25th day of May, 1897, at which time the property was duly exposed for sale and struck off to Christian C. Luippold for $4,200, he being the highest bidder. By the terms of sale the purchaser was to pay ten per cent down and the remainder in ten days. The purchaser gave his check for $420, drawn on the Citizens' Bank of Buffalo, and signed the following

### "MEMORANDA OF SALE.

"I have this 25th day of May, 1897, purchased the premises described in the above annexed printed advertisement of sale, for the sum of four thousand two hundred dollars, and hereby promise and agree to comply with the terms and conditions of the sale of said premises as above mentioned and set forth.

"Copy of advertisement attached.

"Dated *May 25th*, 1897.     CHRISTIAN C. LUIPPOLD."

The sale was held open until three o'clock in the afternoon of that day. The check was presented to the drawee for payment and payment was refused. The drawer had an account at that bank and between two and three hundred dollars to his credit, and, also, had collateral therein to secure any overdraft which he might make. The president of the bank testified that had his attention been called

to the check it would have been paid, as the drawer had deposited collateral with which to secure overdrafts. The check not being paid, the referee at three o'clock offered the property for sale. There were but three persons present and but one bid made, by William H. Barr, a son of the plaintiff, who bid $3,000 for the property, which was immediately struck off to him for that sum. At the sale in the morning James A. Darlington and John J. Kreuz, partners under the firm name of Darlington & Kreuz, who occupied a portion of the premises, bid $4,150. There were other bidders who bid at the morning sale more than $3,000, but none of them, though living in the same city where the sale was made, was notified that a resale was to be made. The property was hurriedly struck off to the person, and at the sum bid, evidently for a purpose. The next morning Luippold, the purchaser, heard that a resale had been made and tendered to the referee $420 in gold in redemption of his check, but it was refused. May 27, 1897, the referee conveyed the premises to William H. Barr, the purchaser at the afternoon sale. May 28, 1897, the referee made his report of sale, showing a surplus of $843.55, and on the same day an order was entered confirming the sale. May 29, 1897, William H. Barr conveyed the premises to Darlington & Kreuz for the recited consideration of one dollar; the real consideration was $4,500, and the grantees testified on the hearing before the referee that if they had been notified of the resale they would have bidden at least the amount which they bid in the morning — $4,150. The check drawn by Luippold was evidently given in good faith, and its non-payment by the bank was a mistake. By this transaction the plaintiff in the action, or his son, made $1,500 at the expense of Benzinger, the owner of the fee, and, also, exposed Luippold to an action for damages for failure to perform his contract of purchase. The transaction bears a suspicious aspect, and I think the evidence amply sustains the report of the referee that the sale should be set aside and the order of the court confirming it and directing a resale should be affirmed. The referee who made the sale, instead of acting on his own judgment, acted under the direction of one of the attorneys for the plaintiff who made the bid for William H. Barr, the second purchaser.

It is the duty of the courts to see that judicial sales are fairly conducted, and that the rights of persons interested in the property

and of honest bidders are protected.   This duty is primarily delegated to the referee who is appointed to make the sale.   In this
case the referee having been offered much more for the property in
the morning than it was sold for in the afternoon, it became his
duty to adjourn the sale or notify the former bidders that a resale
was to be had, and he should not have allowed the property to be
sacrificed in the interest of any one.   (*Angel* v. *Clark*, 21 App.
Div. 339.)

The order should be affirmed, with costs.

All concurred.

Order affirmed, with ten dollars costs and disbursements.