ANDREWS <i>vs.</i> PONTUE.

Where a party by a written instrument recited that he had taken a lease of a lot of ground of another in a certain street, and *agreed* on the opening of another street into the street in which the lot was situated, that he would pay his landlord $100 as soon as such new street should be opened *;* and it was proved that such writing was executed *contemporaneously* with the lease recited in it ; IT WAS HELD, that the execution of the lease was a sufficient *consideration* for the agreement, and that in an action on the agreement the landlord was entitled to recover.

*It seems* also, that though the consideration had been *past* and *executed*, upon proof of the making of the lease, the jury would have been warranted *to infer* that it was executed *at the request* of the defendant; and that even the word *agree* might import evidence of a consideration sufficient to support the agreement.

ERROR from the New-York C. P. Andrews sued Pontue in the court below, in assumpsit on the following instrument : " I, Paul Pontue, having leased from Samuel Andrews a certain piece of ground in Second street, between Avenue D. and C. ; and it being in contemplation to open Sheriff street, from

Houston to Second street, I do hereby agree and bind myself to pay to the said Samuel Andrews the sum of one hundred dollars whenever and as soon as the said street shall be opened. New-York, May 7, 1835." The declaration recited the lease and set forth, as the *consideration of the [* 286 ] agreement, the opening of Sheriff street, averring that such opening would increase the value of the demised premises ; and that it had been opened. The declaration also contained the general counts. At the trial, the signing of the contract was admitted. The defendant's counsel moving for a nonsuit because the instrument was, on its face, a *nudum pactum*, the plaintiff proposed to prove a consideration by extrinsic evidence, which the court below decided he might do ; and he proved that the agreement was made cotemporaneously with the lease, which with the contemplated rise in value from opening Sheriff street, was in fact the consideration for it. This was proved by one Valentine who said he drew the lease and agreement accordingly, and they were executed. The court said this did not vary the case from what it appeared to be by the agreement declared upon ; and that being without consideration, was void. They therefore nonsuited the plaintiff, who took an exception and brought error to this court.

*D. Graham, jun.*, for plaintiff in error.

*J. B. Scoles*, for the defendant in error.

*By the Court*, COWEN, J. The plaintiff was nonsuited upon the abstract ground that the agreement in evidence was without consideration either appearing on its face, or made out by Valentine's evidence ; and not because there was any variance between the consideration as set forth in the declaration, and that relied upon at the trial. This relieves the case from any question upon the pleadings, and raises the single one, whether a sufficient consideration was made out at the trial or is inferable from the evidence.

First, it may be conceded that the naked circumstance of the plaintiff having some time before executed a lease to the defendant would not constitute a consideration legally available in support of the defendant's promise. Being completely past and executed, and not on the defendant's request, no obligation would therefore lie upon him to pay *the sum promised. [ *287 ] Such is undoubtedly the rule, as to the form of pleading. There a promise averred to be in consideration of a past act, is not taken to be valid without the additional averment that the act was done on request, or some equivalent averment ; though I am not prepared to concede that, when we come to the evidence and have the recital of a past consideration before us, and an agreement apparently treating that as the consideration, a request may not be implied. Evidence that yesterday A. delivered to B. his horse, and that to-

day B. agreed to pay him $100 in consideration of that delivery, would clearly authorize a jury to imply a request; and why not on a writing stating the same facts? Suppose it should run thus: A. having sold and delivered to me his horse, I promise to pay him $100 on the opening of Sheriff street; who would hesitate, on that, to say that a sale on request, or such a sale as would constitute a valid consideration, was meant? We are too apt, on questions of this kind, to confound the doctrine of pleadings and evidence. In the former a request must always be alleged as parcel of a past consideration. On the evidence it is scarcely ever proved directly; but is left to be inferred. After Valentine had stated that the leasing and agreement were cotemporaneous, and that one was in fact the consideration of the other, it was very strong to say that no request could be implied. The distinction between pleading a request and proving one arises every day. It passes almost without notice in practice; and is not much regarded by the books. It is glanced at in 1 *Saund. Pl. and Ev.* 137, *Am. ed. of* 1829; and treated of a little more at large in 1 *Saund. R.* 264, *note* (1.) I cannot bring myself to doubt that an express averment of a request in this declaration would have been very well supported by the proof adduced at the trial. At any rate, I have no doubt the jury might have inferred that the recited lease was given at the defendant's request, after what Valentine swore to. Admitting that, on the face of the writing the matter stood ambiguously on the request, and whether it constituted the consideration for the promise, it was an ambigu-

[* 288 ] ity explainable *within several of the cases cited in *Fish* v. *Hubbard's Adm'rs,* 21 *Wendell,* 651; indeed, within the principle of that case itself. No objection could be made to receiving parol evidence on the ground that the consideration was a demise of real estate; and so connecting with a promise parol evidence would be inadmissible by the statute of frauds, being executed, it might as well be connected in that way as the sale of a chattel. Even a deed in fee may be thus connected, in assumpsit for land sold. *Bowen* v. *Bell,* 20 *Johns. R.* 338. In the case cited the connection between the deed and the promise was shown entirely by parol evidence, which was also used even to contradict the clause in the deed which acknowledged the consideration money to have been paid. The rule in respect to all contracts is *ut res magis valeat quam pereat.* The diligence and astuteness which it is the duty of courts to exert in searching after a consideration and connecting it with a promise is illustrated by cases on guaranties. These must always be in writing; but the connection, and even the existence of the consideration, need not be directly and clearly expressed. Although the writing be obscure or ambiguous, the courts take it with its surrounding circumstances; and it is said, in figurative style, will *spell out* a consideration if possible. These cases have been so recently under our consideration and so much examined, that we need not go over them.

What then is the case at bar on the written agreement and the parol evidence, if we are apt to rely specifically on the act of giving the lease as the consideration? The lease was taken with the defendant's assent, and he at the same time agreed to pay the $100, which the witness threw into the form of the agreement declared on. Assent in dealing to receive an article sold or let is constantly received to evince such a request as will satisfy the averment in the declaration. In *pleading* you *aver* things exactly according to the legal effect: in evidence you often *infer* them.

But suppose the recital made nothing towards showing a consideration; suppose it a nullity and strike it out of the instrument, I am still of opinion that sufficient is left from *which to imply a considera-       [ '289 ] tion. The contract will then be, " I do hereby *agree* and bind myself to pay to Samuel Andrews the sum of one hundred dollars, whenever and as soon as Sheriff street shall be opened." Words like these, standing alone, were, in Easter term, 1839, held by the queen's bench, in England, to import a consideration, and were received as sufficient to sustain an action upon an account stated. *Davies v. Wilkinson*, 1 *Jurist, Am. ed. by Halst. & Voorh.* 372. The words were, " *I agree* to pay C. D. £695, at four instalments, (mentioning time and place for all except £95,) and adding, " The remaining £95 to go as a set off," &c. on a certain debt. The court pronounced this to be an *agreement*, not a promissory note; and held that the word *agree*, of itself, imported a consideration. Lord Denman, Ch. J. said, " I think the promise in this case conveyed by the words ' I agree to pay,' imports a consideration, without doing any violence to the language." And the three other learned judges, Littledale, Patteson and Coleridge, expressly concurred in the remark. The case is in point, and agrees with what has long been understood from the word *agreement*, as used in the statute of frauds. It means not only a promise but a *quid pro quo*, *Wain* v. *Warlters*, 5 *East*, 10. Lord Ellenborough, in the case cited, denied that the word was to be understood in a loose and incorrect sense, " as synonymous to *promise* or *undertaking*," but " in its more proper and correct sense, as signifying a mutual contract on consideration between two or more parties." In this view the court concurred. So much for the word when used in a statute; a *fortiori* when used in a contract. The statute might have been made operative without such a construction. In the view we are now taking, this contract cannot.

We have been favoured with the views of the learned judges in the court below, through a report of their opinions. They did not *agree* in sustaining this nonsuit. Two of them felt a difficulty in overcoming the ambiguity, the force of which I have noticed; but which, with deference, I have supposed not to be insurmountable. Neither of them adverted to the import of the word *agree*, when considered *ex proprio vigore*.       [ *290 ]

The third thought the promise might be sustained on an intendment arising upon the face of the instrument that some damage would arise to the plaintiff from opening Sheriff street, with which the promise might be connected. Were it necessary, I should think the case might well have been put to the jury in that third sense ; and it should rather have been maintained upon it than allowed to fail. The other learned judges admitted that it was a strong case for intendment in favor of some consideration ; but I think they felt themselves too much fettered by the exact words which they appear to have looked at in the light of the cases upon mere pleading. If tied up to them, and bound to go on the very words in the recital, they were clearly right. These words do literally import a past demise without telling us that it was on the defendant's *request*, and without directly treating it as a consideration, or clearly showing any consideration ; and the difficulty perhaps was not literally obviated by what Valentine said. Exactly following the recital in *pleading*, would have made a defective declaration. But when we come to *evidence*, the whole field of intendment and construction is opened. There, we may presume, more strongly than in support of a declaration, though after verdict. Yet then, in favor of a declaration, obscure words may be holden equivalent to the direct averment of a request. 1 *Saund. R.* 264, *note* (1,) *before cited*, puts the case I have supposed as a proper one from intendment after verdict. *Vide* the case cited by him : *Hayes* v. *Warren*, 2 *Str.* 933 ; 2 *Barnardist. K. B.* 55, 71, 140, *S. C.* In considering questions of this kind, we should constantly keep in view the precaution inculcated by my brother Nelson, in *Barber* v. *Wilson*, 12 *Wendell*, 102. In pleading an insolvent's discharge, you must always aver the jurisdictional facts, such as the *residence* of the debtor, the *petition* of two-thirds, &c. In the case cited, the court below, on the numerous cases to that effect in regard to *pleading*, required *direct proof* of jurisdiction, independently of the written discharge. This was holden erroneous. When you come to the department of evidence, you go on wider ground. [ *291 ] Accordingly, Mr. Justice Nelson remarked, " the fallacy of the argument consists in blending the rules of evidence with the rules of pleading."

For one, I feel quite clear that the contract in question was sustainable on the evidence, in several paints of view. The judgment below must, therefore, be reversed, a *venire de novo* to go from the common pleas ; the costs to abide the event.

NELSON, Ch. J. and BRONSON, J. said, the lease and the agreement to pay $100 being both executed at the same time, and as part of the same transaction, show a good consideration for the undertaking to pay $100 on the opening of Sheriff street ; and the plaintiff was therefore improperly nonsuited.